UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS WRAY HERNDON,<br><br>                      Petitioner,<br>     v.<br><br>DWIGHT NEVEN[1], *et al.*,<br><br>                      Respondents. | Case No. 3:20-cv-00489-ART-CLB<br><br>**ORDER** |

This habeas matter is before the Court on Respondents' Motion to Dismiss (ECF No. 48). For the reasons discussed below, Respondents' motion is granted, in part, and denied, in part, without prejudice.

**I.    Background**

Petitioner challenges a 2015 judgment and conviction imposed by the Second Judicial District Court of Washoe County. (ECF No. 45-47.) A jury found Petitioner guilty of eight counts of sexual assault on a child and two counts of lewdness with a child under the age of fourteen. (*Id.*) The state court entered a judgment of conviction on June 11, 2015, and sentenced Petitioner to an aggregate term of 90 years to life. (*Id.*) Petitioner appealed, and the Nevada Supreme Court affirmed the judgment of conviction. (ECF No. 46-30.) The Nevada

---

[1] The state corrections department's inmate locator page indicates that Petitioner is incarcerated at the Lovelock Correctional Center ("LCC"). *See https://ofdsearch.doc.nv.gov/form.php* (retrieved February 2023 under identification number 1141105). The department's website reflects that Tim Garrett is the warden of that facility. *See https://doc.nv.gov/Facilities/LCC_Facility/* (retrieved February 2023). At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodian, Tim Garrett, as Respondent for the prior Respondent Dwight Neven pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

Supreme Court denied the petition for rehearing on July 27, 2017, and remittitur issued on August 22, 2017. (ECF Nos. 46-33, 46-34.)

On August 24, 2018, Petitioner sought post-conviction relief in a state petition for writ of habeas corpus. (ECF No. 46-41.) Following appointment of counsel, Petitioner requested two extensions of time to file a supplement to his state petition, which the state court granted. (ECF Nos. 47-5, 47-6, 47-7.) Petitioner requested a third extension of time to file a supplement to his state petition. (ECF No. 47-8.) The state court denied the third request for extension and dismissed his petition finding it procedurally barred because he filed his petition more than one year after the issuance of remittitur and did not demonstrate good cause for the delay. (ECF No. 47-9.) The Nevada Court of appeals affirmed the dismissal of his state habeas petition. (ECF No. 47-27.)

On August 26, 2020, Petitioner initiated this federal habeas proceeding *pro se*. (ECF No. 1.) The Court appointed counsel and granted leave to amend the petition. (ECF No. 11.) Petitioner filed a first amended petition raising seven grounds for relief. (ECF No. 32.) Respondents move to dismiss the petition as untimely and Grounds 5, 6, and 7 as unexhausted. (ECF No. 48.) Petitioner concedes that Grounds 6 and 7 were not presented to the Nevada state courts, but he argues that they are technically exhausted, and he can overcome the procedural default because his post-conviction counsel was ineffective. (ECF No. 58.)

**II.  Discussion**

    ***a.*  Timeliness**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year limitation period for state prisoners to file a federal habeas petition pursuant to 28 U.S.C. § 2254. The one-year limitation period, *i.e.*, 365 days, begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's judgment of conviction became

final by either the conclusion of direct appellate review or the expiration of the time for seeking such review. *Id.* § 2244(d)(1)(A). The AEDPA limitations period is tolled while a "properly filed" state post-conviction proceeding, or other collateral review is pending. 28 U.S.C. § 2244(d)(2). However, an untimely state petition is not "properly filed" and thus does not toll the federal statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). No statutory tolling is permitted for the time that a federal habeas petition is pending. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).

Petitioner's conviction became final after the Nevada Supreme Court denied rehearing on direct appeal and the time expired for filing a petition for writ of certiorari with the United States Supreme Court on October 25, 2017. The AEDPA statute of limitations began running the following day. Absent another basis for tolling or delayed accrual, the AEDPA deadline expired 365 days later on October 26, 2018.

Petitioner filed his state petition on August 24, 2018, two days after the deadline to file his state petition under N.R.S. § 34.726(1).[2] The state court dismissed the state petition finding it procedurally barred because he filed his petition more than one year after the issuance of remittitur and did not demonstrate good cause for the delay. (ECF No. 47-9.) Because the state petition was not timely under Nevada law, it was not "properly filed" for the purposes of tolling the AEDPA deadline. *See Pace*, 544 U.S. at 417. Therefore, without another basis for tolling or delayed accrual, the AEDPA deadline expired on October 26, 2018, and Petitioner's federal petition, filed 1 year and 10 months later, is time-

---

[2] N.R.S. § 34.726(1) sets the deadline to file a state habeas petition as follows:

> [A] petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the appellate court . . . issues its remittitur.

3

barred.

The parties agree that Petitioner filed his federal petition after the one-year limitation period under AEDPA expired. Petitioner argues that he can overcome any procedural or timeliness bars because he is entitled to equitable tolling. Specifically, Herndon maintains that he diligently pursued habeas relief in state and federal court, but that extraordinary circumstances, including a mental impairment and effectively being abandoned by his direct appeal attorney, made him unable on his own to timely file his state post-conviction relief and, as a result, his federal habeas relief. Without offering any countervailing evidence, Respondents argue that Petitioner fails to show that his level of impairment and any attorney misconduct entitle him to equitable tolling. Petitioner requests an evidentiary hearing to resolve any factual issues and develop the record on his claim of equitable tolling.

### *b.* **Equitable Tolling**

The one-year period of limitation of 28 U.S.C. § 2244(d)(1) is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling does not stop the limitations clock the way that statutory tolling does.

"First, for a litigant to demonstrate 'he has been pursuing his rights diligently,' *Holland*, 560 U.S. at 649 [...], and thus satisfies the first element required for equitable tolling, he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc), *cert. denied*, 141 S. Ct. 878 (2020). "[I]t is not

enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id.* at 599. "Second, and relatedly, it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." Id.

Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Id.* at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *See, e.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007). "[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy.'" *Smith*, 953 F.3d at 600.

Equitable tolling, though unavailable in most cases, requires a fact-intensive analysis that may involve the confluence of numerous factors. *Lott v. Mueller*, 304 F.3d 918, 923-924 (9th Cir. 2002). Although Petitioner is not required to carry his burden of persuasion at the pleading stage, equitable tolling issues are highly fact-dependent and he must, therefore, allege sufficient facts that would, if true, entitle him to equitable tolling. *See Orthel v. Yates*, 795 F.3d 935, 940 (9th Cir. 2015). In holding that mental impairment can constitute grounds for equitable tolling, the Ninth Circuit has recognized the importance of developing the record and instructed that a court's assessment of equitable tolling must be guided by a "flexible, totality-of-the-circumstances approach." *See*

*Forbess v. Franke*, No. 12–35843, 749 F.3d 837, 842 (9th Cir. 2014); *see also Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (reversing dismissal of federal habeas petition due to district court's failure to develop the record in response to the petitioner's claim of mental incompetency). Because a court must consider the totality of circumstances, equitable tolling due to mental impairment is not foreclosed by the fact the petitioner was represented by counsel and any misconduct by counsel, including alleged abandonment, may be considered as an extraordinary circumstance. *See Milam v. Harrington*, 953 F.3d 1128 (9th Cir. 2020) (reversing dismissal of federal habeas petition and remanding for further consideration of statutory and equitable tolling).

### *i.* **Mental Impairment**

Petitioner argues that he is entitled to 669 days of equitable tolling because he was unable to understand the need to timely file his state petition on August 22, 2018, due to his intellectual disability. (ECF No. 58 at 12-13.) Petitioner "likely discerned that the relevant date of remittitur on direct appeal as August 22, 2017," but "his mental impairments made him unable to understand the need to *file*, not mail, the petition on August 22, 2018." (*Id.* at 13.) He further asserts that his federal petition was prepared by his state post-conviction attorney and Petitioner mailed his federal petition based on that attorney's instructions. (*Id.* at 13.)

To obtain equitable tolling because of mental impairment:

(1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either

    *a.* Petitioner was unable to rationally or factually understand the need to timely file, or

    *b.* Petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

(2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under

6

the totality of the circumstances including reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010).

To support his claim that he meets the first prong of the *Bills* test, Petitioner relies on a 2015 pretrial psychological evaluation prepared by Dr. Mahaffey, who evaluated Petitioner in September 2014. (ECF No. 59-1.) Dr. Mahaffey noted that Petitioner met the criteria for "Borderline Intellectual Functioning," meaning he was "below average in intelligence but not intellectually disabled (formerly known as mentally retarded)." (*Id.* at 7.) Dr. Mahaffey also found that he met the criteria for "Specific Learning Disability." (*Id.* at 7.) While concluding that Petitioner had a full-scale IQ score of 79 (*id.* at 7), Dr. Mahaffrey noted that he was "extremely low, fifth grade" in spelling (*id.* at 3), "at a grade equivalency of 6th to 8th grade" overall in reading, spelling, and math skills (*id.* at 7), and in special education from Kindergarten to twelfth grade (*id.* at 7). Dr. Mahaffrey's report noted that while in the U.S. Navy "they discovered he could not read" and "put him in a program," and he later succeeded educationally because he is "mechanically inclined." (*Id.* at 4.)

A critically important question is whether Petitioner still suffered from this mental impairment when he should have filed his federal petition or a protective petition. Petitioner relies on a 2022 psychological evaluation prepared by Dr. Leany. (ECF No. 59-5.) Dr. Leany opined that Petitioner still suffered from an intellectual disability that would impede his ability to timely file a petition and "struggles with executive functioning tasks, including working and immediate memory." (*Id.* at 6-7.) Dr. Leany concluded that Petitioner's "executive functioning deficits most likely impaired his ability to file his petition in a timely manner." (*Id.* at 7.)

Respondents mine Dr. Leany's evaluation to support their argument that Petitioner is not entitled to equitable tolling and did not suffer from a mental impairment during the relevant time period. Respondents point to Dr. Leany's

notes that Petitioner honorably served in the military, enjoys reading, and previously lived independently, including paying his bills, suggesting he understands deadlines. These facts about Petitioner fail to materially undermine Dr. Leany's own conclusions that Petitioner suffers from "specific deficits in visual related tasks as well as executive function abilities. The latter deficits are most evident when task complexity increases. . ." (*Id.* at 7.) Though Respondents offer no countervailing evidence to rebut Petitioner's allegations, their arguments highlight that the facts are disputed and could be further developed.

### ii. Attorney Abandonment

In addition to mental impairment, Petitioner claims that his direct appeal counsel effectively abandoned him. "Equitable tolling may be warranted in instances of unprofessional attorney behavior; however, the AEDPA deadline will not be tolled for a garden variety claim of excusable attorney neglect or mistake." *Doe v. Busby*, 661 F.3d 1001, 1011-12 (9th Cir. 2011) (citing *Spitsyn*, 345 F.3d at 800-02). The attorney's misconduct must be "a sufficiently egregious misdeed like malfeasance or failing to fulfill a basic duty of client representation" to warrant equitable tolling. *Id.* at 1012 (citing *Spitsyn*, 345 F.3d at 801). Petitioner argues that his direct appeal attorney, Thomas Qualls ("Qualls"), effectively abandoned him because Qualls's office only sent two letters to Petitioner. (ECF No. 58 at 14.) The state court informed Petitioner that Qualls was his attorney of record in October 2017 but did not inform Petitioner that his direct appeal proceedings had concluded. (*Id.*) Qualls withdrew as counsel in April 2018. (*Id.*) Petitioner asserts that there is no indication in the record that Qualls sent Petitioner a notice of withdrawal or informed Petitioner as to how much time he had to file a state petition. (*Id.*)

Respondents argue that Petitioner fails to provide evidence demonstrating when he learned that his direct appeal concluded, and that Petitioner seems to concede that he learned of the Nevada Supreme Court's denial on direct appeal

at some point in 2018. (ECF No. 65 at 4-5.) They assert that as Petitioner filed a state petition in August 2018, he could have similarly filed a federal protective petition. (*Id.*) Petitioner does not address what circumstances or combination of circumstances precluded him from filing a federal petition, especially after the state district court ruled in July 2019 that his state post-conviction petition was untimely. At that point, Petitioner was represented by court-appointed counsel, who appealed the ruling to the Nevada Supreme but did not file a federal protective habeas petition.

The fact that Petitioner was represented during phases of his state post-conviction proceedings does not preclude equitable tolling. *See Malim*, 953 F.3d at 1132 (citing *Bills*, 628 F.3d at 1099 (observing that equitable tolling for mental impairment is available in "myriad circumstances," including cases with petitioners employing counsel)). In *Malim*, the petitioner claimed equitable tolling based on mental impairment and attorney misconduct that appeared to fall short of "true abandonment." *Id.* at 1134 (citing *Luna v. Kernan*, 784 F.3d 640, 648 (9th Cir. 2015)). The court in *Malim* acknowledged that the petitioner's mental impairment may have prevented the petitioner from monitoring his state habeas lawyer in a way that could have prevented the late filing of his federal petition. *Id.* at 1133. Here the facts are disputed and could be developed to allow the Court to consider Petitioner's claim of equitable tolling in light of all the circumstances.

### *iii.* **Diligence**

Although Herndon has alleged that he was reasonably diligent in pursuing his rights, there remains a question of whether he was reasonably diligent in pursuing federal habeas relief. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653.

> In determining whether reasonable diligence was exercised courts shall consider the petitioner's overall level of care and caution in light

> of his or her particular circumstances and be guided by decisions made in other similar cases with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.

*Smith*, 953 F.3d at 599 (internal punctuation and citations omitted). While abandonment by an attorney may, in certain circumstance, constitute an "extraordinary circumstance," the attorney's actions alone cannot satisfy the separate and distinct requirement that a defendant demonstrate diligence. *See, e.g., United States v. Buckles*, 647 F.3d at 890. In *Holland v. Florida*, 560 U.S. 631, 652 (2010) (finding that despite his attorney's failings, petitioner acted diligently in pursuing federal habeas relief).

While Herndon diligently pursued his state post-conviction rights, it is unclear on the existing record why he failed to file his federal petition any sooner. Petitioner does not allege a date or range of dates demonstrating when he learned that his direct appeal concluded other than a vague assertion that "there is no indication that [Petitioner] even knew that the direct appeal proceedings concluded until sometime in 2018." (ECF No. 58 at 14.) Herndon may not have known that his state post-conviction petition was untimely (by just two days) when he filed it in August 2018, but would have learned this when the state court ruled it to be untimely in July 2019. Although Herndon diligently appealed to the Nevada Supreme Court and, when that appeal was rejected, promptly filed his federal habeas petition. As Respondents point out, although Petitioner was at times represented by counsel, at no point did he file a protective federal petition.

### *iv.* **Evidentiary Hearing**

In assessing an equitable tolling claim based on mental impairment, the Court must take care not to deny a request for equitable tolling before a sufficient record can be developed. The Court grants Petitioner's request for an evidentiary hearing on equitable tolling because he has alleged facts which, if true, could entitle him to equitable tolling or would at least allow the court to consider the issue in light of all the facts, including alleged misconduct by counsel. The Court

will set a schedule for the parties to meet and confer to submit a joint proposed prehearing scheduling order.

### c. Exhaustion

A state prisoner first must exhaust state court remedies on a habeas claim before presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. *O'Sullivan*, 526 U.S. at 844–45; *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc). A properly exhausted claim "'must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.'" *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996)); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (fair presentation requires both the operative facts and federal legal theory upon which a claim is based).

A state appellate court decision on the merits of a claim of course exhausts the claim. *E.g., Comstock v. Humphries*, 786 F.3d 701, 707 (9th Cir. 2015). "In the exhaustion context, the Supreme Court has admonished lower courts that the complete exhaustion requirement is not intended to 'trap the unwary *pro se* prisoner'." *Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) (quoting *Slack v. McDaniel*, 529 U.S. 473, 487 (2000) (rejecting argument that petitioner should be limited to claims in an initial federal petition after returning to federal court from state exhaustion proceedings)). "More generally, the Court has held *pro se*

11

1  pleadings to a less stringent standard than briefs by counsel and reads *pro se*
2  pleadings generously, 'however inartfully pleaded.'" *Id.* (quoting *Haines v. Kerner*,
3  404 U.S. 519, 520 (1972) (per curiam)). A claim is not exhausted unless the
4  petitioner has presented to the state court the same operative facts and legal
5  theory upon which his federal habeas claim is based. *Bland v. California Dept. of*
6  *Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994).

7  A federal court may not entertain a habeas petition unless the petitioner
8  has exhausted all available and adequate state court remedies for all claims in
9  the petition. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). A "mixed petition"
10 containing both exhausted and unexhausted claims is subject to dismissal. *Id.*
11 Respondents request dismissal of the petition as a mixed petition. (ECF No. 48 at
12 7.) Although resolution of the equitable tolling issue is pending further factual
13 development, the Court addresses the parties' exhaustion arguments to facilitate
14 the federal interest in efficiency, or "streamlining federal habeas proceedings," as
15 AEDPA's exhaustion requirement is designed to reduce "piecemeal litigation."
16 *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

### *i.* **Ground 5**

In Ground 5, Petitioner alleges that trial counsel rendered ineffective assistance for failure to move to suppress Petitioner's statements to Detective Nauman. (ECF No. 32 at 17-18.) Respondents argue that Petitioner failed to present this claim to the Nevada appellate court. (ECF No. 48 at 8.) In response, Petitioner asserts that Ground 5 is exhausted because he argued on appeal that the district court erroneously dismissed the petition as untimely and erroneously found both claims could have been raised on direct appeal. (ECF No. 58 at 17-18.)

Petitioner did not present this claim to the Nevada appellate courts and the Nevada appellate courts did not present a decision on the merits of the claim. Accordingly, the claim as alleged in Ground 5 is unexhausted.

### *ii.* **Grounds 6 and 7**

Petitioner appears to concede that Grounds 6 and 7 were not presented to the state courts. (ECF No. 58 at 18-21.) He argues the claims are technically exhausted, but procedurally defaulted and he can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default. (*Id.*)

A federal court need not dismiss a claim on exhaustion grounds if it is clear that the state court would find the claim procedurally barred. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court."). A claim may be considered procedurally defaulted if "it is clear that the state court would hold the claim procedurally barred." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002). Where a petitioner has "procedurally defaulted" a claim, federal review is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing *Coleman*, 501 U.S. at 754-55). However, in *Martinez v. Ryan*, the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. *See* 566 U.S. 1, 16-17 (2012). "Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if state law requires that all claims be brought in the initial collateral review proceeding ... and if in that proceeding there was no counsel or counsel was ineffective." *Ramirez*, 937 F.3d at 1241 (citing *Martinez*, 566 U.S. at 17). Nevada law requires prisoners to raise ineffective assistance of counsel ("IAC") claims for the first time

13

in a state petition seeking post-conviction review, which is the initial collateral review proceeding for the purposes of applying the *Martinez* rule. *See Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019).

Here, it is clear that Petitioner would face multiple procedural bars if he were to return to state court with his unexhausted claims. *See, e.g.*, NRS 34.726, 34.810. However, Nevada procedural bars can be excused with a showing of cause and prejudice or a fundamental miscarriage of justice (*i.e.*, actual innocence), which are substantially the same as the federal standards. If a petitioner has a potentially viable cause-and-prejudice or actual-innocence argument under the substantially similar federal and state standards, then the petitioner cannot firmly establish that "the state court would hold the claim procedurally barred." *Sandgathe*, 314 F.3d at 376. A different situation is presented, however, where the Nevada courts do not recognize a potential basis to overcome the procedural default arising from the violation of a state procedural rule.

Accordingly, a Nevada habeas petitioner who can rely upon *Martinez*, and only *Martinez*, as a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred but that she nonetheless has a potentially viable cause-and-prejudice argument under federal law that would not be recognized by the state courts when applying the state procedural bars.

In the present case, Petitioner has invoked *Martinez* to overcome a procedural default of the unexhausted ineffective assistance of trial counsel claims in Grounds 6 and 7. It appears that Petitioner has no other potentially viable bases for demonstrating cause and prejudice that might be recognized by the state courts and that thus would preclude a finding of technical exhaustion by procedural default as to the unexhausted claim.

The Court shall defer an analysis of cause and prejudice under *Martinez* of

Grounds 6 and 7 until after the filing of an answer and reply that address both cause and prejudice and the claims on the merits. The Court may then have the benefit of its analysis of a full factual and legal presentation as to all relevant claims.[3] Accordingly, Respondents' motion is denied without prejudice as to Grounds 6 and 7. Respondents may renew their procedural default arguments in their answer.

### III.   Petitioner's Options Regarding Unexhausted Claim

In the instant case, the Court concludes that the ineffective assistance of counsel claim alleged in Ground 5 is unexhausted. Petitioner did not argue that he can demonstrate cause and prejudice under *Martinez* as to Ground 5. Because the Court finds that the petition contains unexhausted claims, Petitioner has these options:

1. He may submit a sworn declaration voluntarily abandoning the unexhausted claim in his federal habeas petition, and proceed only on the exhausted claims;

2. He may return to state court to exhaust his unexhausted claims, in which case his federal habeas petition will be denied without prejudice;[4] or

3. He may file a motion asking this court to stay and abey his exhausted federal habeas claims while he returns to state court to exhaust his unexhausted claims.

With respect to the third option, a district court has discretion to stay a petition

---

[3] The Court notes that the action taken herein is premised upon Petitioner having a potentially viable cause and prejudice argument based upon *Martinez*, and only *Martinez*, as opposed to having also potentially viable cause and prejudice arguments based upon grounds that the state courts would recognize. If Petitioner begins arguing any such additional cause and prejudice arguments herein, that immediately will "kick" this case back into a procedural posture where the next step instead is dictated by *Rose v. Lundy* and its progeny. That is, the Court's action is taken on the premise that the unexhausted claims are technically exhausted by procedural default because Petitioner has no potentially viable cause and prejudice (or actual innocence) arguments that the state courts would recognize as a basis for overcoming the state procedural bars.

[4] This Court makes no assurances as to the timeliness of any future-filed petition.

15

that it may validly consider on the merits. *Rhines*, 544 U.S. at 276. The *Rhines* Court stated:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

544 U.S. at 277.

If Petitioner wishes to ask for a stay, he must file a motion for stay and abeyance in which he demonstrates good cause for his failure to exhaust his unexhausted claims in state court and presents argument regarding the question of whether or not his unexhausted claims are plainly meritless. Respondents would then be granted an opportunity to respond, and Petitioner to reply. Or Petitioner may file a declaration voluntarily abandoning his unexhausted claims, as described above. Petitioner's failure to choose any of the three options listed above, or seek other appropriate relief from this court, will result in his federal habeas petition being dismissed. Petitioner is advised to familiarize himself with the limitations periods for filing federal habeas petitions contained in 28 U.S.C. § 2244(d), as those limitations periods may have a direct and substantial effect on whatever choice he makes regarding his petition.

**IV.   Conclusion**

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 48) is granted, in part, and denied, in part, as follows:

1. Ground 5 is unexhausted.

2. Respondents' request to dismiss Grounds 6 and 7 is denied without prejudice. A decision on whether Petitioner can demonstrate cause and

16

prejudice under *Martinez* as to Grounds 6 and 7 is deferred until the time of merits review. Respondents may reassert the procedural default arguments with respect of those claims in their answer.

It is further ordered that Petitioner shall have 30 days to either: (1) inform this court in a sworn declaration that he wishes to formally and forever abandon the unexhausted Ground 5 for relief in his federal habeas petition and proceed on the exhausted grounds; OR (2) inform this court in a sworn declaration that he wishes to dismiss this petition without prejudice in order to return to state court to exhaust his unexhausted grounds; OR (3) file a motion for a stay and abeyance, asking this court to hold his exhausted grounds in abeyance while he returns to state court to exhaust his unexhausted grounds. If Petitioner chooses to file a motion for a stay and abeyance, or seek other appropriate relief, respondents may respond to such motion as provided in Local Rule 7-2.

It is further ordered that Respondents' motion to dismiss the petition as untimely is denied without prejudice for the parties to address equitable tolling issues at an evidentiary hearing.

It is further ordered that counsel for Petitioner and counsel for Respondents are to meet and confer regarding the terms of a prehearing scheduling order and within 30 days of the date of this order and file a joint proposed prehearing scheduling order that:

1. Proposes three possible hearings dates and indicates the expected length of the hearing;
2. Sets an agreed upon schedule for necessary preparation for and exchange of information in advance of the evidentiary hearing, including disclosure of exhibit and witness lists, including any expert materials and reports;
3. Anticipates that each party will file seven days before the hearing witness lists, exhibits lists, and hearing briefs (limited to 30 pages);

4. Anticipates that each party will file party will file closing briefs (limited to 30 pages) 30 days after their receipt of the transcript of the hearing;

5. Anticipates that necessary arrangements will be made so that Petitioner will attend the hearing in person; and

6. Identifies any matter upon which the parties cannot agree, with a brief description of the issue and the parties' positions.

After the parties submit the joint proposed scheduling order, the Court will schedule the hearing and either approve the prehearing scheduling order proposed by the parties or issue a different prehearing scheduling order. The court will set a status conference one week prior to the hearing.

It is further ordered that the Clerk of the Court is directed to substitute Tim Garrett for Respondent Dwight Neven.

DATED THIS 30th day of March 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE